UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA BEATTY, | No. 2:18-cv-00597-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Lisa Beatty seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record. (ECF No. 15.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 24.)

////

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15) and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 8, 9.).

1

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

I.  BACKGROUND

Plaintiff was born on July 24, 1978; completed high school; is able to communicate in English; and previously worked as a casino or gaming cashier.[2]  (Administrative Transcript ("AT") 259, 287, 305.)  On September 12, 2013, plaintiff applied for DIB and SSI, alleging that her disability began on August 10, 2009.  (AT 25, 476, 483.)  Plaintiff claimed that she was disabled due to endometriosis, diverticulosis, diverticulitis, irritable bowel syndrome ("IBS"), and pain.  (AT 506.)  After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on November 13, 2015.  (AT 285-312.)

At the hearing, plaintiff amended the alleged onset date of her disability to February 14, 2014.  (AT 289.)  Plaintiff was represented by counsel during the hearing.  (AT 288.)  When the ALJ inquired whether the record was complete, the attorney stated that it was.  (Id.)  Nevertheless, the ALJ left the record open until December 4, 2015.  (AT 25, 311-12.)  Plaintiff proffered additional medical records and the opinion of a consultative examiner, but did not provide any records from treating psychologist John Rourke, Ph.D.  (AT 587-89; 2306-37.)

The ALJ subsequently issued a decision dated August 2, 2016, determining that plaintiff had not been under a disability as defined in the Act, from February 14, 2014, through the date of the ALJ's decision.  (AT 25-35.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 17, 2018.  (AT 1-7.)  Plaintiff subsequently filed this action on March 20, 2018, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

////

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

II.     ISSUES PRESENTED

On appeal, plaintiff raises two issues: (1) whether the ALJ improperly weighed the medical opinion evidence; and (2) whether the ALJ improperly discounted plaintiff's credibility.

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV.     DISCUSSION

A.      Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] Preliminarily, the ALJ determined that plaintiff meets

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled

3

the insured status requirements of the Act through December 31, 2014. (AT 28.) At step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since February 14, 2014, the amended alleged onset date. (Id.) At step two, the ALJ found that plaintiff has the following severe impairments: IBS; depression; anxiety; chronic anemia; seizure disorder; peptic ulcer; and obesity. (Id.) However, at step three, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC"), finding that plaintiff could perform sedentary work as defined in 20 C.F.R. §§ 404.1576(a) and 416.967(a), except that plaintiff:

////

---

persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> is limited to lifting and carrying less than ten pounds frequently and ten pounds occasionally; standing or walking two out of eight hours; she has no limitations in sitting; she is limited to occasionally climbing ramps and stairs; no work at unprotected heights, around hazardous machinery, and no operation of a motor vehicle; cannot climb ladders, ropes, scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she is able to perform simple, routine tasks and occasional decision making and can handle occasional changes in the work setting; and she is further limited to occasional interactions with the public and coworkers.

(AT 30.)

At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. (AT 33.) Yet, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (AT 34.) Thus, the ALJ concluded that plaintiff has not been under a disability, as defined in the Act, from February 14, 2014, through August 3, 2016. (AT 34-35.)

When the Appeals Counsel denied plaintiff's request for review, it addressed evidence submitted by plaintiff, after the ALJ's decision. (AT 2.) Specifically, the Appeals Counsel considered medical questionnaires completed on September 29, 2016 by Charles Edwards, M.D. and Alejandro Abarca, L.C.S.W. (AT 241-49), and explained that "[t]his additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 3, 2016," the date of the ALJ's decision. (AT 2.)

B. <u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

1. *Whether the ALJ improperly weighed the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. <u>Holohan</u>, 246 F.3d at 1202.

////

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, plaintiff alleges that the ALJ failed to properly credit the opinion evidence from John Rourke, Ph.D., Charles Edwards, M.D., and Alejandro Abarca, L.C.S.W. without articulating legitimate reasons for doing so. (ECF No. 15 at 17-24.)

        i.    **September 2016 Opinions**

The opinions from Dr. Edwards and social worker Abarca were each dated September 29, 2016, after the ALJ rendered his decision. As such, these opinions fall outside the scope of the ALJ's review, and the Appeals Council correctly concluded that this evidence is not relevant to plaintiff's current applications for DIB and SSI.

////

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

6

ii. **John Rourke, Ph.D.**

Dr. Rourke, plaintiff's treating psychologist, provided several medical source statements regarding plaintiff's mental limitations. (AT 592-95, 950-54, 955, 1356-59.) Dr. Rourke wrote letters in 2012, concluding that plaintiff had severe symptoms of depression and posttraumatic stress disorder that meets one of the Listings of depressive disorders. (AT 592-95.)

On October 4, 2013, Dr. Rourke completed a form regarding plaintiff's mental disorders, indicating that plaintiff could not "usefully perform or sustain activity" in several categories. (AT 950-54.) Dr. Rourke also concluded that plaintiff had a fair ability to understand, remember, and carry out simple instructions, and to interact appropriately with the public and coworkers. (AT 953.)

Then, on January 31, 2014, Dr. Rourke filled out a mental impairment questionnaire, opining that plaintiff had marked restrictions of activities of daily living; extreme difficulty in maintaining both social functioning and concentration, persistence, or pace; and that plaintiff had four or more episodes of decompensation within a 12 month period. (AT 1356-59.) Dr. Rourke also checked boxes to indicate that plaintiff had 2 years of mental impairments that caused her to have three of more episodes of decompensation within a year, each lasting two weeks long; that plaintiff had an inability to adjust to independent living arrangement (noting that she lived with her parents); and that plaintiff would miss more than four days of work a month. (AT 1358-59).

Finally, on February 14, 2014, Dr. Rourke submitted a check-box mental residual functional capacity assessment form, indicating that plaintiff could rarely perform most activities, and could only occasionally understand and remember very short and simple instructions; make simple work-related decisions; and ask simple questions or request assistance. (AT 1071.)

The ALJ considered these opinions and found as follows:

> Dr. Rourke's opinions do not coincide with the overall records. As noted by the state agency consultants, Dr. Rourke has not submitted his clinical records to review whether it is consistent with his opinions. Dr. Rourke also imposed severe limitations in social functioning and in concentration, persistence, and pace, which suggest that his opinion is largely sympathetic and based on the claimant's subjective complaints. In particular, Dr. Rourke indicates that the claimant is susceptible to decompensation; however, she has not been hospitalized for her mental impairments, and her treatment

7

> appears to be limited to medication.  Hence, minimal weight is afforded to Dr. Rourke's opinions.

(AT 33.)

Fundamentally, plaintiff asserts that the ALJ erred by not contacting Dr. Rourke to obtain his treatment records. (ECF No. 15 at 21.) However, it is well established that a claimant bears the burden of providing medical and other evidence that support the existence of a medically determinable impairment. Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits."). Indeed, it is "not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." Yuckert, 482 U.S. at 146 n.5.

Still, as the Ninth Circuit Court of Appeals has also explained, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). As some courts have persuasively observed, the ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997) (citation omitted).

Here, the ALJ clearly fulfilled his duty to develop the record—he specifically questioned plaintiff whether or not the record was complete during the hearing, and plaintiff's counsel responded that it was. Thereafter, the ALJ left the record open after the hearing. Plaintiff submitted additional medical records, but none from Dr. Rourke. Plaintiff disagrees with the ALJ's interpretation of Dr. Rourke's opinions, and raises other unpersuasive objections. However, due to the lack of records from Dr. Rourke, the ALJ reasonably gave Dr. Rourke's

8

opinions minimal weight because they were conclusory and only supported by minimal clinical findings. See Meanel, 172 F.3d at 1114.[5]

2. *Whether the ALJ improperly discounted plaintiff's credibility*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the

---

[5] Plaintiff also indirectly challenges the ALJ's step three findings. (See ECF No. 15 at 19-20.) The ALJ concluded at step three that "[n]o medical expert has opined that the claimant's impairments, either singly, or in concert, meet or medically equal the severity of one of the listed impairments." (AT 29.) This conclusion is incorrect—Dr. Rourke opined that plaintiff meets a Listing. (See AT 592-95.) Nevertheless, this error is harmless and does not warrant remand. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). Specifically, (1) the ALJ reasonably discounted the opinions of Dr. Rourke; (2) plaintiff has not provided a plausible argument that she meets a Listing, based upon medical evidence in the record, see Lewis v. Apfel, 236 F.3d 503, 511-14 (9th Cir. 2001); and (3) the ALJ provided a detailed analysis of why plaintiff does not meet any of the Listings (see AT 29-30), which plaintiff does not independently challenge.

"'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of pain, cramping, abdominal burning, fatigue, and difficulty with concentration, focus, and being around people. Indeed, the ALJ limited plaintiff to sedentary work, with additional physical and mental limitations. (See RFC at AT 30.) Nonetheless, to the extent that the ALJ discounted plaintiff's testimony regarding her symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

### i. **Objective medical evidence**

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).

Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

The ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AT 31.) The ALJ explained that the medical evidence shows that plaintiff is able to manage her IBS, chronic anemia, and peptic ulcer with treatment. (AT 31.) This is supported by substantial evidence in the record, cited by the ALJ. (See AT 285-312, 961, 1565, 1709-10, 1931, 2323-28.) Additionally, the ALJ correctly observed that "[a]s for the seizure disorder, the claimant has not required significant treatment or intervention." (AT 31; see

| | |
|---|---|
| 1 | AT 285-312, 2243-307.)  Moreover, the ALJ pointed out that consultative examining physician |
| 2 | Satish Sharma, M.D. opined that plaintiff did not have any limitations in sitting, standing, |
| 3 | walking, lifting, or carrying.  (AT 32, 2323-28.) |
| 4 | As to plaintiff's mental impairments, the ALJ reasonably determined that "the |
| 5 | longitudinal treatment records do not support the claimant's alleged disability [because] her |
| 6 | treatment has been largely limited to medication with no history of psychiatric hospitalizations." |
| 7 | (AT 32.)  As explained, plaintiff failed to present any medical records from her treating |
| 8 | psychologist to support her alleged mental limitations. |
| 9 | ii.   **Conservative treatment** |
| 10 | Plaintiff's relatively conservative treatment was also a proper consideration.  See |
| 11 | Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable |
| 12 | response to conservative treatment undermines complaints of disabling symptoms); Parra v. |
| 13 | Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of |
| 14 | conservative treatment is sufficient to discount a claimant's testimony regarding severity of an |
| 15 | impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  Here, the ALJ reasonably relied |
| 16 | on the fact that plaintiff's mental impairments were treated largely with medication, and without |
| 17 | any hospitalizations.  The ALJ also pointed out that plaintiff's seizure disorder did not require any |
| 18 | anticonvulsant medications.  (AT 31, 2307.) |
| 19 | iii.   **Condition can be controlled with medication** |
| 20 | A condition that can be controlled or corrected by medication is not disabling for purposes |
| 21 | of determining eligibility for benefits under the Act.  See Warre v. Comm'r of Soc. Sec. Admin., |
| 22 | 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, |
| 23 | 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).  The ALJ noted that |
| 24 | plaintiff's physical and mental impairments here were controlled with medication, as documented |
| 25 | in plaintiff's medical records and her own testimony.  (See AT 31, 285-312, 961, 1565, 1709-10, |
| 26 | 1931, 2323-28, 2243-307.) |
| 27 | //// |
| 28 | //// |

iv.     **Daily activities**

Substantial evidence supports the ALJ's finding that plaintiff's daily activities are inconsistent with her allegations of disabling symptoms and limitations. (AT 32, 292-304.)

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112–13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

As an additional factor for discrediting the severity of plaintiff's alleged limitations, the ALJ referred to plaintiff's daily activities in the record, which demonstrate that, "on a typical day, she is largely sedentary. She is able to perform simple tasks, such as preparing meals, waking up her son, and attending her medical appointments." (AT 32.) This is supported by plaintiff's testimony. (See AT 292-304.)

To be sure, the record also contains some contrary evidence—such as plaintiff needing to lie down for most of the day, as well as constantly throwing up and having diarrhea—suggesting that plaintiff's activities are more limited. (AT 296-97, 300.) However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimat's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

V. **CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 24) is GRANTED

3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: August 23, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

beatty.597.order MSJ